IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:10cr186-MHT |
| | ) | |
| MILTON MCGREGOR, ET AL. | ) | |

UNITED STATES' OPPOSITION TO DEFENDANT MCGREGOR'S
SECOND MOTION TO DISMISS (REGARDING "HONEST SERVICES" CHARGES)

The United States of America, through undersigned counsel, hereby responds to defendant McGregor's Second Motion to Dismiss (Regarding "Honest Services" Charges). Defendant McGregor repeatedly misstates the holding of Skilling v. United States, 130 S. Ct. 2896 (2010), and ignores settled Supreme Court and circuit precedent approving the prosecution of bribery offenses that involve campaign contributions, as well as those that take the form of a stream of benefits exchanged for a series of official acts. As such, the Court should deny McGregor's motion to dismiss charges predicated on 18 U.S.C. § 1346 (Counts 23 to 33).

I.  **BACKGROUND**

On October 1, 2010, a federal grand jury returned a thirty-nine count Indictment, charging defendant McGregor and ten co-defendants with violating multiple federal statutes in connection with a conspiracy and scheme to buy and sell the votes of Alabama state legislators on pro-gambling legislation pending in the Alabama legislature during the 2009 and 2010 legislative sessions. See, e.g., Indict. ¶¶ 28-37 (object, purpose, and manner and means of bribery conspiracy under § 371), ¶¶ 233-236 (description and execution of honest services mail and wire fraud scheme under 18 U.S.C. §§ 1341, 1343 & 1346).

In furtherance of the bribery conspiracy and scheme to defraud the citizens of Alabama of the honest services of their elected officials, the grand jury alleged that defendant McGregor promised campaign contributions, among other things of value, to state legislators in exchange for their favorable votes on legislation he supported.  See, e.g., id. ¶¶ 68-71 (payment of campaign contributions to "Legislator 3," a member of the Alabama House of Representatives), ¶ 75 (campaign contributions to defendant Means), ¶¶ 128-129 (campaign contributions to defendant Preuitt).  In addition, defendant McGregor is alleged to have aided and abetted co-defendants who promised (and agreed to accept) campaign contributions in connection with a vote on the same legislation.  See, e.g., id. ¶¶ 80-81 (describing efforts of defendants Massey, Gilley, and Coker to secure defendant Means's vote), ¶¶ 84-115, 116 (efforts of defendants Massey, Gilley, Coker, and Walker to secure defendant Preuitt's vote).

The Indictment also alleges that defendant McGregor, along with defendants Massey and Gilley, offered "Legislator 2," a member of the Alabama Senate, a lucrative public relations job in exchange for a favorable vote on the pro-gambling legislation.  Id. ¶¶ 50-54.[1]  Further, the grand jury alleged that defendant Crosby, an employee of the Alabama Legislative Reference Service, took various official actions on behalf of defendant McGregor, who, at the time, was paying defendant Crosby $3,000 per month.  Id. ¶¶ 156-181.

## II.    ARGUMENT

Defendant McGregor challenges the eleven honest services counts (Counts 23 to 33).  He seeks dismissal based primarily on two grounds: first, he claims that the honest services statute, 18

---

[1] Defendant McGregor's motion to dismiss does not dispute the propriety of charging this conduct under an honest services theory.

2

U.S.C. § 1346, does not apply to bribes in the form of illicit campaign contributions; and, second, he claims that personal payments made to a public official are not punishable unless they are tied to specific official action. Br. at 2. He is wrong on both accounts.

> **A.   The Supreme Court's Decision in <u>Skilling v. United States</u> Applies to All Bribery and Kickback Schemes.**

In <u>Skilling v. United States</u>, 130 S. Ct. 2896 (2010), the Supreme Court addressed the proper scope of the honest services fraud statute, 18 U.S.C. § 1346. For decades, the statute had been used to reach two forms of honest services fraud schemes: (1) bribes and kickbacks, and (2) undisclosed self-dealing. 130 S. Ct. at 2931-33. In order to avoid due process concerns about potential vagueness, the <u>Skilling</u> Court eliminated the entire second category, <u>id.</u> at 2932, and restricted section 1346 to the "solid core" of honest services fraud—i.e., bribes and kickbacks. Id. at 2931 (holding that the law criminalized "<u>only</u> the bribe-and-kickback core of the pre-<u>McNally</u>[2] case law"); see <u>id.</u> at 2930 ("The 'vast majority' of the [pre-<u>McNally</u>] honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." (quoting <u>United States v. Runnels</u>, 833 F.2d 1183, 1187 (6th Cir. 1987)); <u>id.</u> at 2932 ("Reading § 1346 to proscribe bribes and kickbacks—and nothing more—satisfies Congress' undoubted aim to reverse <u>McNally</u> on its facts.").

Although defendant McGregor repeatedly seizes on the Court's use of the word "core" to fashion his entire argument, the term was used only to distinguish the bribery and kickback heartland

---

[2] Congress enacted § 1346 in 1988 in response to <u>McNally v. United States</u>, 483 U.S. 350, 360 (1987), which held that the mail and wire fraud statutes reached only traditional money and property fraud—and not deprivations of the intangible right of honest services. <u>Id.</u>

of honest services prosecutions from the more amorphous[3] undisclosed self-dealing category of conduct:

> [T]o preserve what Congress certainly intended the statute to cover, we pare that body of precedent down to its core: in the main, the pre-McNally cases involved fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived. Confined to these paramount applications, § 1346 presents no vagueness problem.

Id. at 2928. The Court reasoned that "[w]hatever the school of thought concerning the scope and meaning of § 1346, it has always been 'as plain as a pikestaff' that bribes and kickbacks constitute honest-services fraud, and the statute's mens rea requirement further blunts any notice concern." Id. at 2933 (quoting Williams v. United States, 341 U.S. 97, 101 (1951)) (citations omitted). In sum, the Court concluded that its "construction of § 1346 establish[es] a uniform national standard, define[s] honest services with clarity, reach[es] only seriously culpable conduct, and accomplish[es] Congress' goal of overruling McNally." Id. at 2933 (internal quotation marks omitted) (alterations in original). Thus, after Skilling all bribery and kickback schemes are punishable under § 1346—without limitation.

### B. Honest Services Prosecutions Predicated on Bribe Payments in the Form of Campaign Contributions Remain Viable Post-Skilling.

Not satisfied with Skilling's clear mandate that all bribery and kickback schemes—and no

---

[3] In light of this pre-McNally ambiguity as to the self-dealing theory of honest services fraud, the Court applied the rule of lenity to exclude those schemes. 130 S. Ct. at 2933 ("'[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" (quoting Cleveland v. United States, 531 U.S. 12, 25 (2000)). Defendant McGregor asserts that the rule should be used yet again—to excise campaign contributions as an acceptable form of bribe payment. Br. at 19. Skilling makes clear that the Supreme Court knew what the rule was and when to use it, and any claim that the Court should have used it more liberally is baseless. Had the Court believed there was any ambiguity in its broad ratification of all bribery and kickback schemes as viable under § 1346, it would have spoken. It did not.

other type of scheme—fall within § 1346's ambit, defendant McGregor attempts to manufacture his own novel and unsupported limiting construction of the statute, claiming that honest services bribery cannot involve the payment of campaign contributions in exchange for official action. Br. at 3-12. Defendant McGregor's proposed exception has no basis in Skilling and is belied by the body of bribery-related cases in which illicit campaign contributions have been paid to influence official action.

The principal flaw in defendant McGregor's claim is that he ignores Skilling's incorporation of not only the pre-McNally bribery and kickback "core" of honest services, but also the body of bribery and kickback law that has arisen in related contexts. Specifically, the Court held that § 1346's "prohibition on bribes and kickbacks draws content not only from the pre-McNally case law, but also from federal statutes proscribing—and defining—similar crimes." 130 S. Ct. at 2933 (citing 18 U.S.C. §§ 201(b) (federal bribery), 666(a)(2) (federal program bribery); 41 U.S.C. § 52(2) (anti-kickback statute); United States v. Ganim, 510 F.3d 134, 147-49 (2d Cir. 2007) (Sotomayor, J.) (reviewing honest-services conviction involving bribery in light of elements of bribery under other federal statutes, including §§ 201, 666, and 1951 (Hobbs Act extortion)); United States v. Whitfield, 590 F.3d 325, 352-53 (5th Cir. 2009); United States v. Kemp, 500 F.3d 257, 281-86 (3d Cir. 2007)) (emphasis added). In light of this incorporation, the Court concluded that "[a] criminal defendant who participated in a bribery or kickback scheme, in short, cannot tenably complain about prosecution under § 1346 on vagueness grounds." Id. at 2934.

Each of the related statutes incorporated in Skilling requires payment of a thing of value to effect a bribe or kickback. 18 U.S.C. § 201(b) ("anything of value"); id. § 666(a)(2) & (a)(1)(B) (same); 41 U.S.C. § 52 (same). Nowhere did Skilling suggest some new limitation on the broad

5

construction of what constitutes a thing of value under the body of substantive law developed under these statutes. See, e.g., United States v. Moore, 525 F.3d 1033, 1048 (11th Cir. 2008) (upholding sex-for-official-action bribery conviction and noting the "broad interpretation" of the term "thing of value" for purposes of the federal bribery statute, 18 U.S.C. § 201, which includes both tangible and intangible considerations without regard to "monetary worth"); United States v. Marmolejo, 89 F.3d 1185, 1191 (5th Cir. 1996) (same construction under federal program bribery statute, 18 U.S.C. § 666); cf. United States v. Girard, 601 F.2d 69, 71 (2d Cir. 1979) (reviewing intangibles held to be things of value, including amusement, sexual intercourse or the promise of sexual intercourse, the promise to reinstate an employee, and an agreement not to run in a primary election).[4] There is no question that the hundreds of thousands of dollars of campaign contributions offered to legislators in this case constitute a thing of value under the law.

In addition, contrary to defendant McGregor's assertion that bribe payments under § 1346 must be paid directly to the public official, Br. at 8-12, the statutes expressly incorporated in Skilling recognize that a third-party payment is equally viable. See, e.g., 18 U.S.C. § 201(b)(1) ("Whoever . . . directly or indirectly, corruptly gives, offers or promises anything of value to any public official

---

[4] Defendant McGregor's reliance, Br. at 5-8, on the absence of pre-McNally cases involving campaign contribution bribery is misplaced. The Skilling Court gave no hint that it wished to change the accepted—and broad—definition of a thing of value under an honest services theory, despite the wide variety of benefits conferred in the pre-McNally cases. See, e.g., United States v. Holzer, 816 F.2d 304, 305 (7th Cir. 1987) (personal and bank loans); United States v. Lovett, 811 F.2d 979, 982 (7th Cir. 1987) (ownership stake in company); United States v. Gorny, 732 F.2d 597, (7th Cir. 1984) (cash and business referrals); United States v. Pecora, 693 F.2d 421, 423 (5th Cir. 1982) (cash); United States v. Mandel, 591 F.2d 1347, 1356 (4th Cir. 1979) (clothing, jewelry for third party, and property interests); United States v. Brown, 540 F.2d 364, 374 (8th Cir. 1976) (rental payments for third party); United States v. Isaacs, 493 F.2d 1124, 1146 (7th Cir. 1974) (stock in horse racing organization). Under Skilling, so long as the payment, whatever it may be, is part of a bribery or kickback scheme, it is sufficient to establish honest services fraud.

. . . or promises any public official . . . to give anything of value <u>to any other person or entity</u>, with intent to influence any official act . . . shall be [guilty of bribery]." (emphasis added)); id. § 666(a)(1)(B) ("Whoever . . . being an agent of . . . a State . . . government . . . corruptly solicits or demands <u>for the benefit of any person</u> . . . anything of value from any person, intending to be influenced or rewarded in connection with any business . . . of such . . . government . . . shall be [guitly of federal program bribery]." (emphasis added)); 41 U.S.C. § 52 ("The term 'kickback' means any . . . thing of value . . . which is provided, directly <u>or indirectly</u>, to [certain enumerated individuals] . . . ."). Honest services cases prior to <u>McNally</u> also refute defendant McGregor's contention that the thing of value must be paid directly to the public official.[5] See <u>Mandel</u>, 591 F.2d at 1356 (jewelry for defendant's wife in addition to direct payments); <u>United States v. Brown</u>, 540 F.2d 364, 374 (8th Cir. 1976) (rental payments for defendant's girlfriend).

Given the broad definition of a thing of value and how it can be paid, it is unsurprising that the case law construing the crimes of federal bribery, federal program bribery, and extortion under color of official right recognize the propriety of prosecutions involving campaign-contribution-based bribery schemes. See, e.g., <u>Evans v. United States</u>, 504 U.S. 255, 267 (1992) (upholding conviction under 18 U.S.C. § 1951 for extortion under color of official right based on campaign contributions); <u>United States v. Siegelman</u>, 561 F.3d 1215, 1224-28 (11th Cir. 2009) (upholding federal program bribery conviction under 18 U.S.C. § 666 involving receipt of campaign contributions as bribe),

---

[5] Defendant McGregor bases his claim that § 1346 prosecutions after <u>Skilling</u> must involved "personal self-enrichment" on arguments made by the United States in its <u>Skilling</u> brief. Br. at 8-12. Of course, those arguments—the thrust of which was to suggest a uniform limiting principle under § 1346 that would be applicable in <u>both</u> bribe/kickback and self-dealing schemes—are not the law. <u>Skilling</u> is the law, and it makes no distinction regarding the recipient of illicit payments so long as those payments are in furtherance of a bribe or kickback scheme.

vacated and remanded on other grounds, Siegelman v. United States,130 S. Ct. 3542 (2010); United States v. Brewster, 506 F.2d 62, 77-78 (D.C. Cir. 1974) (holding that former version of federal bribery statute, 18 U.S.C. § 201, applied to illicit campaign contributions).

The continued viability of campaign-contribution bribery prosecutions under § 1346 is also confirmed by Skilling's direct citation, 130 S. Ct. at 2933, to United States v. Whitfield, 590 F.3d at 352-53, an honest services case in which the Fifth Circuit addressed the appropriate standard of proof where, as here, illicit payments are characterized as campaign contributions. In Whitfield, a prominent lawyer paid bribes in the guise of guaranteed loans to two state judges in exchange for various official actions. Id. at 352. On appeal, the defendants challenged the honest services jury instruction, claiming that the government was required to prove an explicit quid pro quo pursuant to which the lawyer provided things of value in exchange for some specific official action. Id. at 351. In affirming the conviction, the court held:

> [W]e are willing to assume that the initial $40,000 loan guarantee to Whitfield and the $25,000 loan guarantee to Teel were campaign contributions. However, we reject any attempt to characterize the $100,000 loan guarantee to Whitfield for the down-payment on a home and the financial and legal assistance provided to Teel in connection with his state prosecution for embezzlement as having anything to do with their respective electoral campaigns. Still, even if we assume that a quid pro quo instruction was necessary because at least some of the financial transactions in question were campaign-related, we conclude that the jury charge in this case sufficiently fulfilled that requirement.

Id. at 353. Thus, by citing to Whitfield, the Skilling Court expressly endorsed the continued viability of honest services prosecutions premised on campaign-contribution bribes.

This conclusion draws additional support from Whitfield's reliance on the Supreme Court's decision in Evans v. United States, 504 U.S. 255, which reviewed a Hobbs Act extortion conviction under 18 U.S.C. § 1951 predicated on the payment of illicit campaign contributions. At the outset,

8

the Evans Court recognized that under common law "[e]xtortion by [a] public official was the rough equivalent of what we now describe as 'taking a bribe.'" Id. at 260. Evans concluded that codification of extortion under color of official right in the Hobbs Act maintained this common law equivalence. Id. at 264 ("[T]he portion of the statute that refers to official misconduct continues to mirror the common-law definition."); see also id. at 268 n.18 (rejecting the "conclusion that extortion under color of official right and bribery are mutually exclusive under either common law or the Hobbs Act"); United States v. Braasch, 505 F.2d 139, 151 n.7 (7th Cir. 1974) (same). Review of Hobbs Act case law, therefore, also informs the definition of bribery for purposes of honest services law post-Skilling. 130 S. Ct. at 2933.

As a result, the fact that Evans was a campaign contribution case further undermines defendant McGregor's attempt to single out this type of payment as somehow beyond the scope of § 1346 post-Skilling. In upholding the Hobbs Act conviction, the Evans Court approved the district court's jury instruction, which read, in part:

> [I]f a public official demands or accepts money in exchange for [a] specific requested exercise of his or her official power, such a demand or acceptance does constitute a violation of the [federal extortion statute] regardless of whether the payment is made in the form of a campaign contribution.

504 U.S. at 258. Thus, although the instruction approved in Evans required that the acceptance of a campaign donation be in return for a specific official action,[6] the Court did not question the general

---

[6] The Evans Court drew support from its earlier decision in McCormick v. United States, which also reviewed a Hobbs Act extortion conviction under 18 U.S.C. § 1951, and held that the mere fact of a campaign donation followed by favorable official action was insufficient to support a conviction. 500 U.S. 257, 272-73 (1991). The Court highlighted the unique nature of this type of political speech and reversed McCormick's conviction, holding that only if campaign contribution "payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act, are they criminal." Id. at 273. Concurring the next year in Evans, Justice Kennedy stated, however, that "[t]he official and the payor need not state the quid pro quo in express

9

validity of prosecutions predicated on the payment of illicit campaign contributions to procure official action. In this case, defendant McGregor single-mindedly pursued just one official act—the passage of pro-gambling legislation—and the Indictment charges a clear link between campaign contributions and that official action.

In light of Skilling's holding and the doctrines it incorporates, the prosecution of bribe schemes based on payment of illegal campaign contributions is wholly uncontroversial. Campaign contributions, which, in fact, are tangible and easily assigned monetary value (though they need not be under the law), more than satisfy the liberal definition of "thing of value." Promised and realized contributions result in a direct benefit to the candidate, who can use the funds, at his or her discretion, for all manner of self-promotion in order to secure an election victory. The more contributions a candidate solicits, the less money he or she must personally contribute to his campaign. Defendant McGregor's suggestion that a monetary campaign contribution is not a thing of value finds no support in the law. Skilling's "uniform national[7] standard" requires no such benefit

---

terms, for otherwise the law's effect could be frustrated by knowing winks and nods." 504 U.S. at 274 (Kennedy, J., concurring); id. (noting that the quid pro quo could be "implied from [the official's] words and actions"); United States v. Blandsford, 33 F.3d 685, 696 (6th Cir. 1994); see also United States v. Giles, 246 F.3d 966, 972 (7th Cir. 2001); United States v. Tucker, 133 F.3d 1208, 1215 (9th Cir. 1998); United States v. Hairson, 46 F.3d 361, 365 (4th Cir. 1995). But see Ganim, 510 F.3d at 142 (concluding that McCormick requires "proof of an express promise . . . when the payments are made in the form of campaign contributions."). That Skilling incorporated this heightened showing for campaign contribution bribe payments blunts defendant McGregor's claim that applying § 1346 in this context somehow impermissibly would implicate First Amendment concerns. Br. at 15-17.

[7] Defendant McGregor also claims that permitting § 1346 to cover state campaign contributions improperly would implicate federalism concerns. Br. at 18. It is undisputed, however, that § 1346 applies to state and local officials, and defendant McGregor provides no explanation for why exempting one type of bribe payment from the multitude of possible payments would somehow protect states' interests in any appreciable way. Regardless, to the extent courts have acknowledged

and places no limitations on the form a bribe or kickback must take other than those which are imposed under the other bribery doctrines the Supreme Court incorporated—e.g., federal bribery, federal program bribery, and Hobbs Act extortion under color of official right.

### C. Skilling Endorses Stream-of-Benefits Bribery.

Moving away from campaign contributions, defendant McGregor next claims that all bribery and kickback schemes under Skilling's construction of § 1346 require proof that payments were made with intent to influence a specific official act. Br. at 13-15. Focusing on his alleged payments to defendant Crosby, defendant McGregor asserts that the honest services statute does not apply to his conduct unless the government ties each monthly payment to a specific official act by defendant Crosby. Again, defendant McGregor is wrong, and Skilling itself shows why.

In situations involving direct payments of money to a public official, as opposed to campaign contributions, the law uniformly endorses charging bribery where the payor initiates a stream of payments to a payee with the shared understanding that the payments are in exchange for a pattern of official action, even where the specific official action is uncertain at the time of the payment. For example, in United States v. Kemp, 500 F.3d 257 (3d Cir. 2007), the Third Circuit upheld a jury instruction which stated that "where there is a stream of benefits given by a person to favor a public official, . . . it need not be shown that any specific benefit was given in exchange for a specific official act." Id. at 281 (internal quotation marks and citation omitted); id. at 282 ("[T]he government

---

federalism concerns in the honest services context, see United States v. Brumley, 116 F.3d 728, 734-35 (5th Cir. 1997) (en banc) (requiring proof of a state law violation to pursue § 1346 prosecution of state officials), Skilling noted and declined to adopt such limiting principles, 130 S. Ct. at 2928 n.37, choosing simply to limit the statute's reach to bribery and kickback schemes under a nationwide standard. As such, defendant McGregor's attempt to exempt state campaign contributions from the honest services landscape by raising the specter of federalism is foreclosed by Skilling itself.

need not prove that each gift was provided with the intent to prompt a specific official action."); see also United States v. Abbey, 560 F.3d 513, 518 (6th Cir. 2009) (holding in Hobbs Act and federal program bribery case that McCormick's heightened quid pro quo requirement is not applicable outside the campaign-contribution context and that "it is sufficient if the public official understood that he or she was expected to exercise some influence on the payor's behalf as opportunities arose"); United States v. Kincaid-Chauncey, 556 F.3d 923, 944 n.15 (9th Cir. 2009) ("It is sufficient, for example, if the evidence establishes that the government official has been put on 'retainer'—that is, that the government official has received payments or other items of value with the understanding that when the payor comes calling, the government official will do whatever is asked."); Ganim, 510 F.3d at 149 (holding that, in order to establish quid pro quo bribery on an honest services theory, "the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions)" (internal quotation marks omitted)); United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir. 1998) ("[E]ach payment need not be correlated with a specific official act. . . . In other words, the intended exchange in bribery can be 'this for these' or 'these for these,' not just 'this for that.'"). A stream-of-benefits theory of bribery also finds support in pre-McNally case law. Gorny, 732 F.2d at 600 (upholding honest services conviction where cash payments made to local official "could not be linked to directly to any action on a particular real estate assessment file").

      This unambiguous and well-established line of cases is directly contrary to defendant McGregor's argument. What is more, the Supreme Court fully endorsed this doctrine in Skilling, citing both Ganim and Kemp—and in particular the portions of those opinions ratifying the stream-of-benefits theory of bribery. See 130 S. Ct. at 2934.

      To support his claim that Skilling requires proof of an agreement regarding a specific official

act, defendant McGregor cites to the Supreme Court's decision in <u>United States v. Sun-Diamond Growers of California</u>, 526 U.S. 398 (1999), which addressed the federal gratuity provision under 18 U.S.C. § 201(c)(1)(A). According to defendant McGregor, <u>Sun-Diamond</u> makes "clear under § 201 that there is a bribe <u>only</u> if a payment is made with the specific intent to influence a specific, identifiable, and known act." Br. at 14. This is a misstatement of the <u>Sun-Diamond</u> holding: the Court drew a clear distinction between an illegal gratuity under § 201(c)(1)(A)—which requires identification of a specific official action—and a bribe under § 201(b)—which does not. 119 S. Ct. at 1406. This is not a gratuity case. Defendant McGregor also cites to <u>United States v. McNair</u>, 605 F.3d 1152, 1190-91 (11th Cir. 2010), which, in fact, <u>rejected</u> application of <u>Sun-Diamond</u>'s specific-act requirement in the case of bribery under 18 U.S.C. § 201(b) and federal program bribery under 18 U.S.C. § 666. 605 F.3d at 1191. As such, personal payments—like the ones defendant McGregor is alleged to have made to defendant Crosby in connection with pro-gambling legislation—are punishable as bribes absent an agreement regarding specific official action.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny defendant McGregor's motion to dismiss regarding honest services charges (Counts 23 to 33).

> Respectfully submitted,
>
> LANNY A. BREUER
> Assistant Attorney General, Criminal Division
> Attorney for the United States
> Acting Under Authority of 28 U.S.C. § 515
>
> JACK SMITH, Chief
> Public Integrity Section

By: /s/ Eric G. Olshan
   Eric G. Olshan
   Trial Attorney
   Public Integrity Section
   U.S. Department of Justice
   1400 New York Ave., NW, Suite 12100
   Washington, DC 20005
   (202) 514-1412
   eric.olshan@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

 /s/ Eric G. Olshan
Eric G. Olshan
Trial Attorney
Public Integrity Section
U.S. Department of Justice
1400 New York Ave., NW, Suite 12100
Washington, DC 20005
(202) 514-1412
eric.olshan@usdoj.gov