IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:10cr186-MHT |
| | ) | |
| MILTON MCGREGOR, ET AL. | ) | |

UNITED STATES' OPPOSITION TO DEFENDANT MILTON MCGREGOR'S
FIRST MOTION TO DISMISS CHARGES BROUGHT UNDER 18 U.S.C. § 666(A)(2)

The United States of America hereby opposes defendant Milton McGregor's First Motion to Dismiss Regarding Charges Premised on 18 U.S.C. § 666. Counts 1,3, 4, 5, 8, 10, and 15 of the Indictment charge defendant McGregor with bribing state legislators and legislative staff by offering and paying hundreds of thousands of dollars of money, campaign contributions, and other things of value in connection with the core business of state government: passing state legislation.

According to McGregor, his wide-ranging corruption of the legislative process in connection with pro-gambling legislation is beyond the reach of federal law because passing legislation is not "commercial" activity. This a particularly ironic claim. It is beyond dispute that pro-gambling legislation carries with it the potential for enormous commercial impact in Alabama. If it did not, the legislation would be of no use to commercial gambling enterprises, such as defendant McGregor's Victoryland. Not surprisingly, his argument finds no support in the language of § 666, its history and purpose, or the cases in which the statute has been interpreted and applied. Section 666 applies broadly to the business of all three branches of a state or local government that receives more than $10,000 in federal funding in a given year, as the State of Alabama certainly does. His motion should be denied.

**I.    INTRODUCTION**

Defendant McGregor erroneously argues in his motion that § 666(a)(2) does not prohibit bribing state legislators or legislative employees in order to influence the drafting or passage of laws. In order to reach his unlikely conclusion, he argues that (1) legislators are not agents of the state when enacting legislation, and (2) the "business" and "transactions" of state government, including the legislative branch, include only "commercial" activity, and not the routine business of a legislature, such as drafting and voting to pass bills. Defendant McGregor is wrong.

Section 666(a)(2) criminalizes offering or paying bribes to an agent of a state or local government that receives in excess of $10,000 in federal funding, in connection with "any business, transaction, or series of transactions" of the government involving anything of value of $5,000 or more. The Supreme Court has explained that the statute broadly prohibits corruption of state agents, without regard to whether the particular business or transaction at issue involved federal funds: "Section 666(a)(2) addresses the problem at the sources of bribes, by rational means, to <u>safeguard the integrity</u> of the state, local, and tribal <u>recipients</u> of federal dollars." <u>Sabri v. United States</u>, 541 U.S. 600, 605 (2004) (emphasis added). The federal government's interest in safeguarding the integrity of state and local agencies is no less compelling when the business or transactions at issue is of a "non-commercial" nature. The statute requires only that a state agent be corrupted in connection with the state's business, and does not require a direct impact on federal funds, much less an impact on commercial activity.

State legislators and legislative staff wield substantial power in the allocation of state and local funds, which in turn affects the allocation of the hundreds of millions of dollars of federal funds provided to the state; accordingly, § 666 broadly prohibits acts that corrupt these individuals,

regardless of whether the immediate activity has an impact on federal funds or involves commercial activity. As the Supreme Court stated: "Money is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value. Liquidity is not a financial term for nothing; money can be drained off here because a federal grant is pouring in there." Id. Put simply, § 666 broadly protects the integrity of state governments and prohibits efforts to corrupt them through bribery.

Here, defendant McGregor has been charged with committing bribery offenses that corrupted the integrity of the core "business" of the Alabama state legislature—making laws. Excluding such crimes from prosecution under § 666(a)(2) would unduly narrow the government's "business" and contradict relevant caselaw. Accordingly, courts around the country have affirmed convictions under § 666(a)(2) relating to bribes paid to influence non-commercial activity in all three branches of government.

II.   **ARGUMENT**

   A.   **The Text of § 666(a)(2) Makes Clear That the Statute Prohibits Bribes Made or Offered in Connection with Purely Legislative Activity by State Legislators.**

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Applying that principle here, it is clear that Congress intended § 666(a)(2) to prohibit the misconduct for which defendant McGregor and his co-defendants were charged in the aforementioned counts of the Indictment. Defendant McGregor aims to vitiate § 666(a)(2) by improperly excluding from the statute's reach bribes paid to state legislators in the context of "non-commercial" activities. That crimped interpretation ignores, however, the

common-sense meaning of the statute's text, as well as persuasive authority that squarely undercuts defendant McGregor's argument.

### 1. Common-sense interpretation of the text of § 666(a)(2) shows that the statute covers bribes offered or given in a non-commercial context.

As previously mentioned, § 666(a)(2) prohibits offering or making bribes "in connection with any business, transaction, or series of transactions." § 666(a)(2) (emphasis added). The ordinary meaning of "business" and "transaction"—particularly of "business"—covers, as a primary definition, non-commercial activities. "Business" denotes "[t]hat which habitually busies or occupies or engages the time, attention, labor, and effort of persons as a principal serious concern or interest." Black's Law Dictionary 179 (5th ed. 1979); see also United States v. Bonito, 57 F.3d 167, 172 (2d Cir. 1995) ("'Business,' broadly defined, includes 'work,' 'professional dealings,' 'one's proper concern,' and 'serious work or endeavor that pertains to one's job.'"); Webster's Third New International Dictionary 302 (1961) (describing business as "an activity engaged in as normal, logical, or inevitable and usually extending over a considerable period time"; synonymous with "role" or "function").

Particularly with government agencies, the term "business" commonly describes the government's official powers and duties, without restriction to the government's commercial business. See, e.g., Ysursa v. Pocatello Educ. Ass'n, 129 S. Ct. 1093, 1096 (2009) (upholding state law barring government paycheck deductions for political action committees because "of the State's interest in avoiding the appearance that carrying out the public's business is tainted by partisan political activity") (emphasis added); Pleasant Grove City v. Summum, 129 S. Ct. 1125, 1131 (2009) (in government-speech First Amendment case, stating that "[i]t is the very business of government

to favor and disfavor points of view") (emphasis added) (quoting Nat'l Endowment for Arts v. Finley, 524 U.S. 569, 598 (1998)); Oregon v. Ice, 129 S. Ct. 711, 718 (2009) (in Sixth Amendment Confrontation case, noting that "preventing and dealing with crime is much more the business of the States than it is of the Federal Government") (emphasis added) (internal quotation marks and citation omitted); Garcetti v. Ceballos, 547 U.S. 410, 428 (2006) (in government employment case, expressing concern over "the government's capacity to conduct public business") (emphasis added); Cheney v. U.S. District Court for D.C., 541 U.S. 913, 921 (2004) (Scalia, J., mem. op.) (in opinion addressing recusal, noting that "social courtesies, provided at Government expense by officials whose only business before the Court is business in their official capacity, have not hitherto been thought prohibited") (emphases added).[1]

Reinforcing the view that "business" and "transaction" should be interpreted broadly is the word "any" that precedes the phrase "business, transaction, or series of transactions." 18 U.S.C. § 666(a)(2). Such unqualified language signals the statute's broad reach over all business or transactions, and cautions against attempts to limit the statute's application to financial activities. Salinas v. United States, 522 U.S. 52, 57 (1997) (holding that "[t]he word 'any,' which prefaces the

---

[1] It is telling that Congress, when it sought to prevent kickbacks (a form of bribery in which the transaction generates the funds for the bribe) in federal-government contracting, used much more narrow terms in describing the government activities covered by the Anti-Kickback Act. 41 U.S.C. §§ 51-58. Specifically, prohibited "kickback[s]" are defined as those payments made for the purpose of obtaining or rewarding favorable treatment in connection with a "prime contract" or a "subcontract relating to a prime contract." 41 U.S.C. § 52(2). "Prime contract" and "subcontract" themselves are specifically defined as a "contract or contractual action" "for the purpose of obtaining supplies, materials, equipment, or services of any kind." § 52(4), (7). In sharp contrast, § 666 uses the broader term "business." This contrast highlights the fact that Congress knows how to use narrower terms when discussing commercial or contractual activities of the government, particularly in the context of a bribery statute.

business or transaction clause" undercuts an attempt to narrow the reach of the statute) (citations omitted); see also United States v. Koh, 199 F.3d 632, 637 (2d Cir. 1999) (the term "any" as used in relation to a bank fraud statute means without limitation); Johnston v. Iowa Dep't of Human Servs., 932 F.2d 1247, 1249 (8th Cir. 1991) (as used in a federal statute, the word "'any' literally means 'any'").

For example, Salinas v. United States involved a bribery scheme operated by sheriffs who worked in a county prison for which the United States Marshals Service had an agreement to house federal prisoners. 522 U.S. at 54. A prisoner bribed a deputy sheriff in exchange for allowing the prisoner to have conjugal visits with his wife and girlfriend. Id. at 55. Nothing in the Salinas bribery scheme, however, related to commercial activities of the county or the prison; rather, the bribes were paid solely to obtain additional privileges not available to other prisoners. The Fifth Circuit nevertheless affirmed the convictions, holding that conjugal visits for prisoners were a "thing of value" related to the business of properly housing prison inmates. United States v. Marmolejo, 89 F.3d 1185, 1191-92 (5th Cir. 1996) (citing United States v. Mongelli, 794 F. Supp. 529, 531 (S.D.N.Y. 1992)).

The Supreme Court likewise affirmed the convictions. Salinas, 522 U.S. at 54. In doing so, the basis of the Court's holding was the plain language of the statute and, in particular, the word "any" in the phrase "any business, transaction, or series of transactions." Id. at 57. Responding to the defendant's attempt to limit the statute to bribery affecting federal funds, the Court held that "[t]he word 'any,' which prefaces the business or transaction clause, undercuts the attempt to impose this narrowing construction." Id.

6

Although <u>Salinas</u> did not directly address the definition of "business" and "transaction,"[2] the Supreme Court rejected any constitutional question about whether § 666 applied to the facts of the case, stating that the "preferential treatment accorded to [the defendant] was a threat to the integrity and proper operation of the federal program." <u>Id.</u> at 61.  The decision's focus on the integrity of the recipient of the federal funding, and its reliance and emphasis on the word "any" in the business or transaction clause, cautions against narrowing the construction of the business or transaction clause of § 666.

Consistent with the Supreme Court's approach in <u>Salinas</u>, other courts have concluded that the phrase "business, transaction, or series of transactions" should be applied broadly.  <u>See,</u> <u>e.g.</u>, <u>United States v. Bonito</u>, 57 F.3d 167, 172 (2d Cir. 1995) (holding that the word "business" as used in § 666 includes "'work,' 'professional dealings,' 'one's proper concern,' and 'serious work or endeavor that pertains to one's job'"); <u>United States v. Apple</u>, 927 F. Supp. 1119, 1126-27 (N.D. Ind. 1996) (denying motion to dismiss indictment charging defendant with bribing an officer of the state environmental agency and concluding that the agency's primary business is preventing pollution, which is encompassed by § 666 even though such a "business" does not involve government contracting); <u>United States v. Marlinga</u>, No. 04-80372, 2006 WL 2086027, at *5 (E.D. Mich. July 25, 2006) (rejecting defendant's arguments that the prosecution of criminal cases was not a "business or transaction" under § 666 and holding that a prosecutor's job to properly, and without corrupt intent, proceed in criminal cases "is plainly" within the definition of "business" as used in § 666).

---

[2] Whether conjugal visits were a thing of value in connection with the business of the prison was not raised as an issue before the Supreme Court.  <u>Salinas</u>, 522 U.S. at 61 ("[W]e do not address § 666(a)(1)(B)'s applicability to intangible benefits such as contact visits, because that question is not fairly included within the questions on which we granted certiorari.").

7

Despite this widespread understanding that the meaning of "business" and "transaction" extends beyond direct financial activity, defendant McGregor urges the Court to view § 666 in a narrow commercial sense. He relies on inapposite caselaw, unsupported contentions, and misleading statutory interpretation to confine the full common-sense meaning of these terms.

Defendant McGregor cites two decisions from the Eleventh Circuit as support for his hobbled definitions of the terms. Br. at 5-6. Neither decision carries any force here. Both decisions involve commercial litigation claims: it is therefore unsurprising that they define "business" and "transaction" solely in commercial terms. One decision, <u>Hawthorne v. Mac Adjustment</u>, 140 F.3d 1367 (11th Cir. 1998), refers only to "transactions" in the very specific commercial context of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. 140 F.3d at 1371 ("[W]e do not hold that every consensual or business dealing constitutes a 'transaction' triggering application of [the Act]."). That definition has no relevance to criminal law, let alone § 666(a)(2). The other decision, <u>Flava Works, Inc. v. City of Miami</u>, 609 F.3d 1233 (11th Cir. 2010), addresses whether commercially related activity that took place at a residence made the residence "<u>a</u> business." 609 F.3d at 1239 (emphasis added). Similarly, <u>Flava Works</u> is concerned only with whether certain commercial activity can comprise a business; the decision is silent regarding the full scope of what business activity may include in other contexts.

Defendant McGregor also claims that the requirement in § 666(a)(2) that the "business, transaction, or series of transactions" at issue must "involve anything of value of $5,000 or more" further emphasizes the statute's exclusive application to commercial bribery. Br. at 9. Once again, his argument improperly constricts the statute's meaning by pointedly ignoring the word "anything." Caselaw clarifies that "[t]he term '<u>anything</u> of value' . . . is broad in scope and contains no language

restricting its application to transactions involving money, goods, or services." Marmolejo, 89 F.3d at 1191 (holding that "business, transaction, or series of transactions" under § 666(a)(1)(B), the mirror provision to § 666(a)(2), may involve intangibles); see also United States v. Santopietro, 166 F.3d 88, 92 (2d Cir. 1999), abrogated on other grounds, Sabri, 541 U.S. 600 (same); Mongelli, 794 F. Supp. at 531 (holding that § 666(a)(2) applies to bribes paid or offered in exchange for intangibles). Far from limiting § 666(a)(2) to commercial bribery concerning public contracts and the like, the "anything of value" requirement makes it even clearer that the statute applies also to intangible benefits, such as the passage of legislation.[3]

      **2.      The plain meaning of the terms "agent" and "government agency" in § 666(a)(2) further confirms that the phrase "business, transaction, and series of transactions" applies to non-commercial governmental activity**.

Section 666 criminalizes bribery that "influence(s) or reward(s) an agent of an organization or of a State." The statute defines "agent" to mean "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." § 666(d)(1). State legislators and legislative staff fall within the plain terms of this simple definition. Yet defendant McGregor wishes to read more into the statute, suggesting that they may only be deemed "agents" when they are engaged in commercial activity. His proposed gloss to the plain language of the statute finds no support in the statute itself or its straightforward definition of the term "agent."

---

[3] Defendant McGregor also mentions the distinction between the government as a market participant versus a regulatory body in a strained effort to bolster his conclusion that § 666(a)(2) focuses on the former. Br. at 6-7. Notably, defendant McGregor fails to cite to a single decision regarding § 666(a)(2) that touches on that alleged distinction—because there is none. The distinction is merely a red herring that has no bearing on the present case.

9

There is nothing in the language of § 666 to suggest that the term "agent" means something less than what it says on its face, and defendant McGregor offers no reason to limit it to a subset of executive, judicial, and legislative officers who have commercial responsibilities. Put simply, a state legislator with no direct role in contracting or procurement activities of the government would still be an "agent" of state government.

There can be no question that a member of a state legislature is an agent of that state. See United States v. Lipscomb, 299 F.3d 303, 333 n.155 (5th Cir. 2002) (describing a city councilman whose duties included voting on local measures as an officer of that city). State legislators are "authorized to act on behalf of . . . a government," § 666(d)(1), in its most important affairs: passing laws in that state's name. Through the power to legislate, Alabama State legislators are agents of the Alabama State government for purposes of § 666(a)(2). So too are the employees of the Alabama State legislature mentioned in the Indictment, such as defendant Crosby, who help legislators draft bills. As "employees" and "servants" who serve the State of Alabama through its legislature, they also fall directly under the definition of government agents found in § 666(d)(1).

The primary, if not sole, duties of these governmental agents—drafting and voting on legislation—is not commercial in nature. While it is true that they may also at times engage in commercial activities, such as issuing a contract to a supplier for office equipment, this occasional involvement does not explain why the statute's scope should be limited to the corruption of purely commercial activity. Nothing in the statute suggests that § 666(a)(2) does not apply to the legislative process.

Furthermore, under the theory that "business" or "transaction" applies solely to commercial activities, lower-level government procurement employees could be prosecuted under the statute,

but higher-level officials who have a much broader impact on the integrity of government functions and the allocation of state and federal funding could not.  Under such a crabbed reading of the statute, bribing an Alabama State senator in connection with a contract for office supplies for the Alabama State senate would merit prosecution under § 666(a)(2), but bribing the same senator to pass legislation affecting the entire State of Alabama would not.  This example illustrates the oddity of limiting the phrase "any business, transaction, or series of transactions" to commercial transactions.  There simply is no reason why Congress would want § 666 to apply to low-level procurement issues, but not to corruption related to the most critical of governmental business, the making of laws.

To be clear, the United States does not assert that § 666(a)(2) is a "boundless" "catch-all" anti-bribery provision, as defendant McGregor contends.  Br. at 1, 16.  In addition to requiring that a "business" or "transaction" of government, organization, or agency be involved in the corruption, the statute has a number of other threshold requirements that must be met for prosecution.  See, e.g., United States v. Whitfield, 590 F.3d 325, 345 (5th Cir. 2009) (recognizing that bribes must be accepted in connection with any business or transaction of the particular governmental agency of which the employee at issue is charged with being an agent); United States v. McNair, 605 F.3d 1152, 1186 n.38 (11th Cir. 2010) (noting that the $5,000 statutory threshold applies to the "business, transaction, or series or transactions," as opposed to the value of the bribe).  But these requirements do not restrict the statute's application solely to commercial bribery.

Caselaw directly supports this conclusion.  Under facts analogous to those in the Indictment, courts have affirmed convictions under § 666 in cases that involved the bribery of local and state agents in connection with non-commercial activity.  See, e.g., United States v. Oros, 578 F.3d 703,

705 (7th Cir. 2009) (affirming conviction of a City of Chicago building inspector charged with accepting bribes in exchange for expediting architectural plans through the City's approval process); Fernandes, 272 F.3d at 938 (affirming conviction of a local prosecutor who accepted bribes in exchange for accessing driver's license files and expunging convictions); United States v. Zimmerman, 509 F.3d 920, 926-27 (8th Cir. 2007) (affirming conviction of a city councilman for accepting items of value in exchange for influencing the councilman's vote on a zoning application); United States v. Guishard, 163 Fed. Appx. 114, 116 (3d Cir. 2006) (unpublished opinion) (affirming conviction of a conservation enforcement officer for accepting a bribe in return for misidentifying the suspect of an investigation).

For example, in United States v. Lipscomb, the Fifth Circuit held that a member of the Dallas City Council who had accepted bribes from a taxicab company in exchange for casting votes favorable to the company's interests could be convicted under § 666. Lipscomb, 299 F.3d at 303. Importantly, the assistance provided by the council member in exchange for the bribes was not strictly financial in nature. Rather, it related to measures designed to increase the business of the taxicab company or harm the business of the company's competitors. Id. at 307. Like the convicted defendant in Lipscomb, the defendants in the present case faces charges relating to bribes that were paid to buy legislative votes. Lipscomb and the other caselaw cited above make clear that § 666 prohibits such non-commercial bribery.

Even so, defendant McGregor struggles to deflect the weight of this caselaw by pointing to a single case, Single Moms, Inc. v. Montana Power Co., 331 F.3d 743 (9th Cir. 2003), which involved a § 1983 civil suit and addressed neither § 666 nor criminal law in general. Id. at 746. Moreover, in Single Moms, the Ninth Circuit sought to define the term "agent" only with respect to

12

whether state legislators were "acting for the state with private parties in a 'joint activity,'" as opposed to legitimately carrying out their legislative duties. Id. at 747. Noting that the legislators at issue did not represent the state in a "joint activity" with private parties, the Ninth Circuit concluded that the legislators were not state "agents"—for purposes of a § 1983 lawsuit. Id. The question in the present case is distinguishable: it asks whether legislators and legislative employees acted as agents, as § 666 defines that term, of the State of Alabama when they voted on and drafted legislation. As shown above, decisions regarding § 666 make it clear that they did.

Defendant McGregor's strained effort to use the noscitur a sociis doctrine[4] to support his interpretation of § 666 likewise falls short. Br. at 8. Citing this canon, he argues that "officer," under § 666, should, like the other terms that help define "agent" under § 666(d)(1) (e.g., "servant," "employee," "partner," "director," "manager," and "representative") have a purely commercial connotation. Once again, defendant McGregor's argument ignores both the plain text of the statute and caselaw from a number of jurisdictions.

Defendant McGregor also suggests that comparison of the language of § 201 to the language of § 666 reveals an effort to limit the latter. Br. at 14-16. Specifically, he points to two things. First, he notes that § 666 prohibits bribery with respect to "business" and "transactions," whereas § 201 prohibits bribery with respect to "official acts," which he views as a broader category. Id. at 15. Second, he notes that § 201 specifically identifies Members of Congress as "public officials" who fall under that statute's anti-bribery provisions. 18 U.S.C. § 201(a)(1). These differences in

---

[4] This canon of statutory construction stands for the proposition that words are best understood by the company they keep. See, e.g., Edison v. Douberly, 604 F.3d 1307, 1309 (11th Cir. 2010). Put differently, the doctrine holds that words in a statute should be interpreted in light of the other words that surround them. Id.

language are without significance. The meaning of the terms "business" and "transactions" in § 666 is clear enough without requiring reference to a totally different bribery provision. Moreover, the caselaw cited above clearly indicates that when adjudicating convictions under § 666, courts adopt the plain meaning of "business" and "transaction," and widely agree that the business of state and local officials may include non-commercial acts, such as drafting and voting on legislation. See, e.g., Lipscomb, 299 F.3d at 303.

In sum, despite defendant McGregor's attempts to argue to the contrary, the plain language of the phrase "business, transaction, or series of transactions" in § 666(a)(2) requires that "business" or "transaction" be interpreted to cover non-commercial functions of the government. A contrary reading of the statute would "exclude conduct clearly intended to be within in its scope." Salinas, 522 U.S. at 59 ("No rule of construction, however, requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope.") (internal quotation marks omitted); Grossi, 143 F.3d at 350 ("It is not our part to trim § 666 by giving its text a crabbed reading.") (citing Salinas). Moreover, as noted above, the statute clearly applies to legislators and legislative employees. It must therefore also apply to the legislative process because legislatures do not, per se, engage in commercial activity.

    B.    **The Legislative History of § 666 Further Establishes That the Statute Covers Non-Commercial Business and Transactions.**

Defendant McGregor contends that the legislative history of § 666 shows that Congress did not intend the statute to apply to non-commercial or non-financial business or transactions. Br. at 12-14. As shown above, it is unnecessary to look any further than the statute's plain language in order to understand that the statute does, in fact, prohibit bribes made or offered to state legislators

in relation to their non-commercial business, such as voting on laws.  See United States v. Albertini, 472 U.S. 675, 680 (1985) ("Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language.").  But, assuming for the sake of argument that it is necessary to look further, legislative history indicates that congressional intent in passing § 666 explicitly focused on extending federal law to public corruption offenses committed by state and local officials.

Before the passage of § 666, the sole federal anti-bribery provision was 18 U.S.C. § 201, which applies only to "public officials" acting under federal authority.  Salinas, 522 U.S. at 58.  The federal courts of appeals were divided over whether state and local officials fell within the scope of § 201.  Id.  In response, Congress enacted § 666 for the express purpose of permitting the federal prosecution of state and local officials engaged in bribery.  Id.  As the Supreme Court has emphasized, Congress passed § 666 in order to fill "regulatory gaps" left by the question of whether local officials could face federal prosecution for bribery offenses.  Sabri, 541 U.S. at 607.

Defendant McGregor notes that Congress mentioned three cases in the legislative history of § 666, and that all three concerned bribery in connection with how the recipients of federal funds secured or provided governmental goods and services.  Br. at 11 (referring to United States v. Del Toro, 513 F.2d 656 (2d Cir. 1975); United States v. Mosely, 659 F.2d 812 (7th Cir. 1981); United States v. Hinton, 683 F.2d 195, 197-200 (7th Cir. 1982)).  Defendant McGregor is wrong, however, when he concludes that Congress meant for these three cases to signal the outer reaches of § 666.  The cases served merely as the impetus for congressional action aimed at closing a loophole that excepted local and state officials who committed corruption offenses from facing prosecution under the federal bribery statute, § 201.  See Salinas, 522 U.S. at 58 ("Congress enacted § 666 and made

it clear that federal law applies to bribes of the kind offered to the state and local officials in <u>Del Toro</u>, as well as those at issue in <u>Mosley</u> and <u>Hinton</u>."); <u>Sabri</u>, 541 U.S. at 607 ("Those laws had proven inadequate to the task.").

In short, congressional intent in passing § 666 was not to focus on certain types of bribery, but to broaden the scope of <u>who</u> could be prosecuted for bribery.  "Thus [the Supreme Court has] said that § 666 'was designed to extend the federal bribery prohibitions to bribes offered to state and local officials employed by agencies receiving federal funds' . . . thereby filling the regulatory gaps." <u>Id.</u> (quoting <u>Salinas</u>, 522 U.S. at 58).  Many state and local officials (such as state legislators) engage in business (such as passing and drafting laws) that is not directly related to commercial activity.  It would make no sense for Congress to enact a statute explicitly intended to prohibit public corruption among those officials that also does not permit prosecution for bribery relating to those officials' primary duties.

> C.  **None of the Rules of Interpretation or Constitutional Principles Cursorily Raised by Defendant McGregor Alter the Conclusion That § 666(a)(2) Prohibits Bribing and Offering or Agreeing to Offer a Bribe to a State Official in Connection With Voting and Drafting Legislation.**

In a last-ditch effort to save his motion, defendant McGregor refers in cursory fashion to a hodgepodge of statutory rules of interpretation and constitutional principles.  Br. at 16-22.  The medley of claims that he raises include constitutional due process, First Amendment, and Tenth Amendment federalism concerns; the rule of lenity; the doctrine of fair notice; the clear statement rule of statutory interpretation; and the doctrine of constitutional avoidance.  These claims are baseless, and should be rejected.

As an initial matter, defendant McGregor's various claims are wholly unsupported by

16

relevant caselaw. Not a single claim cites a decision involving § 666 for support. In addition, defendant McGregor's First Amendment concerns are particularly unwarranted. He contends that the term "corruptly" in § 666 is unconstitutionally vague when used in prosecutions involving campaign contributions. Br. at 19. According to defendant McGregor, this is because "[t]here is no settled understanding as to what connection between a campaign contribution and a legislative vote or other action must be proven in order to constitute a crime." Id. The Supreme Court has made it clear that a statute is unconstitutionally vague only (1) if it fails to provide adequate notice to people of ordinary intelligence that specified conduct is proscribed or (2) if it permits arbitrary and discriminatory enforcement. Gonzales v. Carhart, 127 S. Ct. 1610, 1615-16 (2007). But as previously explained, the statutory text, legislative history, and caselaw all clearly illustrate what is required to obtain a conviction under § 666 in cases where bribery involves non-financial business and transactions, such as legislative action. There is no constitutional vagueness problem with respect to § 666 prosecutions that involve campaign contributions in exchange for votes.

Furthermore, some of defendant McGregor's claims apply only when there is ambiguity regarding the meaning of a statute. In particular, as defendant McGregor notes, Br. at 16-17, Fifth Amendment due process requirements, the rule of lenity, and the doctrine of fair notice all apply only in situations when statutory ambiguity jeopardizes the rights of defendants. But as explained above, the plain meaning of the text of § 666, relevant caselaw, and statutory history make it clear that there is no ambiguity here. Although defendant McGregor would surely prefer otherwise, § 666 means what it says: the statute prohibits bribery of exactly the sort that defendant McGregor is charged with committing in Counts 1, 3, 4, 5, 8, 10, and 15 of the Indictment.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny defendant McGregor's First Motion to Dismiss Charges Brought Under 18 U.S.C. § 666(a)(2).

                                                             Respectfully submitted,

                                                             LANNY A. BREUER
                                                             Assistant Attorney General, Criminal Division
                                                             Attorney for the United States
                                                             Acting Under Authority of 28 U.S.C. § 515

                                                             JACK SMITH, Chief
                                                             Public Integrity Section

By:   /s/ Eric G. Olshan
        Eric G. Olshan
        Trial Attorney
        Public Integrity Section
        U.S. Department of Justice
        1400 New York Ave., NW, Suite 12100
        Washington, DC 20005
        (202) 514-1412
        eric.olshan@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on November 22, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

        /s/ Eric G. Olshan
Eric G. Olshan
Trial Attorney
Public Integrity Section
U.S. Department of Justice
1400 New York Ave., NW, Suite 12100
Washington, DC 20005
(202) 514-1412
eric.olshan@usdoj.gov